514 P.2d 493

The STATE of Arizona, Appellee,
v.
Blas Casas PEREZ, Appellant.
No. 2541.

Supreme Court of Arizona,
In Banc.
Sept. 27, 1973.

Gary K. Nelson, Atty. Gen., by Peter Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Rudy Gerber, Sp. Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilty to the crime of murder in the second degree, §§ 13–451 and 13–452 A.R.S., and a sentence of not less than 40 years nor more than life.

We are asked to answer the following questions on appeal:

1. Did the trial court commit reversible error in failing to examine the ten year old witness prior to her testimony?

2. Was it reversible error for the trial court to fail to declare a mistrial because of an alleged conversation between the State's chief witness and a juror prior to the commencement of the trial?

The facts necessary for a determination of the matters on appeal are as follows. The defendant, Blas Casas Perez, had been on ill terms with the Mendoza family for some time. In 1969 the daughter of the victim had to call the police to have the defendant Perez removed from the Mendoza premises. On 16 February 1970, Tony Mendoza, the son of the victim, and the defendant engaged in a fist fight in a bar in Phoenix, Arizona. On 22 February 1970, the defendant, together with a brother David Perez and two others, went to the Mendoza residence and asked for Tony Mendoza. The daughter of the deceased went to the neighbors to call the police. By the time the police arrived, the deceased, Espiridion Mendoza, had been struck over the head with a crowbar wielded by the defendant Blas Perez. The deceased died six days later.

Although there were numerous witnesses to the events surrounding the altercation, there were only two eyewitnesses to the actual beating. Jose Mendoza, the son of the victim, testified he attempted to chase the defendant off of the property, failed to do so and then witnessed the defendant strike his father twice with a crowbar. He testified for some 131 pages, mostly on cross-examination, and his testimony was particularly damaging. The other eyewitness was the granddaughter of the deceased, Sally Mendoza, who was ten years and seven months old when she testified in court. The defendant did not request and the trial court did not interrogate the witness concerning her competency to testify prior to her testimony.

The jury was instructed and given forms of verdicts for first degree murder, second degree murder, and manslaughter. They returned a verdict of guilty of second degree murder and defendant appeals.

## FAILURE TO INTERROGATE THE TEN YEAR OLD WITNESS

Our statute states:

"The following shall not be witnesses in a civil action:

\*　　\*　　\*　　\*　　\*　　\*

"2. Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are to testify, or of relating them truly." § 12–2202 A.R.S.

And:

"The laws for determining competency of witnesses in civil actions are also applicable to criminal actions and proceedings, except as otherwise provided by this chapter." § 13–1801 A.R.S. See

also Rule 272, Rules of Criminal Procedure, 17 A.R.S.

We have stated:

"It is the settled law in this state that the trial court must examine children under ten years of age to determine whether they are capable of receiving just impressions and relating them truly. * * *" Davis v. Weber, 93 Ariz. 312, 316, 380 P.2d 608, 611 (1963). See also State v. Brown, 102 Ariz. 87, 425 P.2d 112 (1967); Litzkuhn v. Clark, 85 Ariz. 355, 339 P.2d 389 (1959).

■ It does not follow that the trial court on its own motion must examine a child over the age of ten years, in this case ten years and seven months, and absent a request by the defendant we will not consider the error on appeal unless it appears from the testimony that the error was fundamental and prejudicial. In the instant case the defendant did not object until the end of the trial. We have reviewed the witness's testimony and we agree with the statement of the trial court:

"But I want the record to show that in addition to the fact that nobody specifically or even intimated to the Court that some hearing outside of the jury should have been held or inquiry of the witness concerning her understanding of the oath, not having been made, if I had after hearing her testimony felt for one second that she did not understand the seriousness of the proceedings or her purpose in being on the witness stand or if I felt that she was obviously lying, I would have stricken her testimony then and there.

"To the contrary, the Court felt that she was not only a bright little girl but apparently had a good memory, kept her emotions in order, she wasn't too nervous, she was responsive to questions, she stood up under a rather severe cross-examination for a little girl her age and although there might be room to argue whether or not she remembered too much too quickly because of the passing of time and her age, those raise fact questions. The Court is satisfied now and was then that she was old enough and bright enough to understand the nature of an oath and her responsibility to the public. She is obviously a good student in school, speaks English well. I am satisfied that hers was competent evidence."

We find no error.

## CONVERSATION BETWEEN PROSECUTION WITNESS AND A JUROR

■ After the trial and during the course of an aggravation and mitigation hearing, the mother of the defendant testified that in an early stage of the trial Jose Mendoza, the son of the victim and the State's major witness, had been seen talking and laughing with the jurors. Jose Mendoza testified to the contrary:

"Q BY THE COURT: After you were sworn in you left the courtroom?

"A They put us in a room back here.

"Q Yes, you left the courtroom?

"A Right.

"Q Did you at any time on that day after you were sworn in out in the hallway or in the anteroom or in that little room or outside the elevators or anywhere, have any occasion to talk to anybody on the jury for any reason or purpose?

"A No, sir, no one. We didn't talk to nobody. We stayed alone in that room for all the time we were in there.

"Q Who was 'we'?

"A The rest of the witnesses.

"Q The Mendoza family?

"A Right, uh huh.

"Q Did you ever during that first day speak to anybody on the jury?

"A No, sir.

*    *    *    *    *    *

"Q From the very beginning of this trial when you were sworn in in the courtroom until the jury's verdict

was returned, are you aware or do you know if anybody in your family or any Mendoza talked to anybody on the jury during a recess or a lunch hour or after we recessed in the evening for the next morning?

"A No, sir, we haven't even discussed it among ourselves yet. Nothing.

\*　\*　\*　\*　\*　\*

"Q BY THE COURT: I asked you whether you talked to the jury.

"A No."

In ruling, the court stated:

"There is no evidence before the Court of what words were spoken. There is no evidence of improper remarks. There is no evidence of anything that would indicate or suggest to this Court that the jury did anything other than abide by their oath as jurors, nor is there anything that tells me that a State's witness violated the rule which was invoked and what he was instructed upon, because the evidence before me is that this occurred prior to that. I am just as much interested as you are, Mr. Garcia, in making certain of the integrity of the jury's verdict."

A reading of the transcript indicates that the facts amply support the decision of the trial court in this regard.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.